570 A.2d 1350

Francis M. POWERS, Jr., M.D., Cancer Treatment
Associates, P.C., and Divine Providence Hospital
of the Sisters of Christian Charity, Petitioners,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF
HEALTH, Health Images Pennsylvania, Inc., the Williams-
port Hospital, and Health Images, Inc., Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 1989.

Decided Jan. 22, 1990.

Reargument Denied April 3, 1990.

James J. Rodgers, with him, Charles E. Caniff, Jr., Chris-
tine S. Dutton, Steven A. Haber, and Deborah Finkle Mitch-

ell, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, for petitioners.

Kenneth E. Brody, Asst. Counsel, Harrisburg, for respondent, Dept. of Health.

Ruth M. Siegel, Post & Schell, P.C., Harrisburg, for respondent Health Images, Inc. and Health Images Pennsylvania, Inc.

J. David Smith, McCormick, Reeder, Nichols, Sarno, Bahl & Knecht, Williamsport, for respondent, The Williamsport Hosp.

Before DOYLE and PALLADINO, JJ., and BARBIERI, Senior Judge.

DOYLE, Judge.

This is an appeal by Francis M. Powers, Jr., M.D., Cancer Treatment Associates, and Divine Providence Hospital of the Sisters of Christian Charity (collectively Petitioners) from a determination of the Department of Health (Department) that the proposal of Health Images Pennsylvania, Inc. (Health Images) [1] to establish a radiation therapy center at the Williamsport Hospital is not subject to the Certificate of Need (CON) procedures set forth in the Health Care Facilities Act (Act), Act of July 19, 1979 P.L. 130, *as amended*, 35 P.S. §§ 448.101–448.904. Also before us are motions to quash filed by the Department and Health Images (collectively Respondents) asserting that Petitioners lack standing to appeal and, alternatively, that they have failed to exhaust their administrative remedies.

The case began when, by letter dated January 24, 1989, Health Images submitted, pursuant to Sections 701(a)(5) and 702(i) of the Act,[2] a letter of intent to acquire a linear

1. While there is both a Health Images, Inc. and a Health Images Pennsylvania, the distinction is not important for our purposes here.

2. 448.701(a)(5) and 448.702(i) respectively. Section 701(a)(5) pertinently provides:

(a) No person shall offer, develop, construct or otherwise establish or undertake to establish within the State a new institutional health service without first obtaining a certificate of need from the

accelerator and related ancillary equipment in order to provide radiation services. In this letter Health Images indicated, *inter alia,* that the approximate cost of the equipment would be one million two hundred eighteen thousand dollars; that radiation services would be provided on an outpatient basis only; that the radiation center would be wholly owned and operated by Health Images; that the equipment would be located in a "freestanding" building next to Williamsport Hospital; and, that the radiation services would not be offered by or through Williamsport Hospital. The letter concludes by suggesting that the proposed acquisition does not establish a "new institutional

department. For purposes of this chapter, New institutional health services shall include:

. . . .

(5) Major medical equipment not owned by or located in a health care facility which will:

(i) be used to provide service for inpatients of a health care facility; or

(ii) for which a notice was not provided in accordance with subsection (i) of section 702.

Section 702(i) states:

(i)(1) Before any person enters into a contractual arrangement to acquire major medical equipment which will not be owned by or located in a health care facility or before any person acquires an existing health care facility, such person shall notify the department of such person's intent to acquire such equipment or existing health care facility.

(2) The notice shall be in writing in a form specified by the department and shall be made at least 30 days before contractual arrangements are entered into to acquire the major medical equipment or the existing health care facility.

(3) In the case of the intended acquisition of major medical equipment, the notice shall contain information regarding the use that will be made of the equipment. In the case of the intended acquisition of an existing health care facility, the notice shall contain information with regard to the services to be offered in the facility and its bed capacity.

(4) Within 30 days after the receipt of the notice, department shall inform the person providing the notice whether or not the proposed acquisition is a new institutional health service. If the department determines that the acquisition will be a new institutional health service, the acquisition shall be subject to the remaining provisions of this act.

(5) A decision of the department that an acquisition requires a certificate of need may be appealed to the Health Facility Hearing Board.

health service" as that term is used in Section 701(a) of the Act and, hence, no CON is needed.

Subsequent to this letter being sent to the Department, Petitioners sent letters to the Department requesting leave to intervene in the matter. In essence, Petitioners took issue with certain of the statements in Health Images' January 24 letter and contended that in fact a CON was needed for acquisition of the equipment. In response to these letters the Department first, by letter dated February 21, 1989, sought additional information from Health Images (which Health Images provided) and second, on March 3, 1989, granted Petitioners' petitions to intervene but limited their status by indicating (1) that that status would cease when the Division of Need Review determined whether or not a CON review was needed and (2) that the grant of intervenor status did not confer upon them party standing "in the Department's consideration of the notice of intent, or appeal rights with respect to the Department's ultimate determination on reviewability."

Thereafter, Petitioners did submit additional information to the Department. Ultimately, on April 28, 1989, after considering the information submitted by Health Images and Petitioners, as well as additional information supplied by Williamsport Hospital, the Department issued the determination of nonreviewability which forms the basis of the present appeal. In that determination the Department stated that the project does not require a CON "because the acquisition of major medical equipment, not owned by or located in a health care facility or acquired on behalf of a health care facility, is reviewable only when it will be used to provide services to inpatients of any health care facility."

Petitioners, who are best described as potential competitors of the proposed therapy center, have appealed to this Court alleging that the Department's determination of nonreviewability was erroneous as a matter of law and that the Department violated Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, by not holding a hearing, and Section 507 of the Administrative Agency Law, 2 Pa.C.S.

§ 507, by not rendering an adjudication containing factual findings and legal conclusions. In response to this petition Respondents have filed the motions to quash which we shall now consider.

Respondents contend that Petitioners, as competitors, lack standing to appeal a determination of nonreviewability. They cite for this proposition our recent decision in *Powers v. Department of Health,* 121 Pa.Commonwealth Ct. 321, 550 A.2d 857 (1988). In *Powers* the issue was "whether a competitor has standing under the Act to challenge another's determination of nonreviewability on the basis that the determination was rendered without affording the rival notice and an opportunity to be heard on the matter." *Id.,* 121 Pa.Commonwealth Ct. at 326, 550 A.2d at 860. We first acknowledged in *Powers* this Court's precedent that a *health systems agency* does have standing to appeal a determination of nonreviewability. *Southern Chester County Medical Center v. Department of Health,* 90 Pa. Commonwealth Ct. 284, 494 A.2d 885 (1985). We expressly declined, however, in *Powers* to expand the holding of *Southern Chester* to business competitors.[3] We wrote:

> We must consider whether *Southern Chester* should be extended to give Petitioners in the case now before us standing to appeal ... a determination [of nonreviewability]. We believe it should not. Our resolution of this issue turns upon the fact that if we extend standing to Petitioners then we must also hold that they are entitled to notice of the letter of intent along with other aggrieved persons and we find nothing in the statutory scheme which provides for such notice to be effected ... Because there are no provisions in the Act requiring notice of the preliminary inquiry to competitors and other members of the general public, we must conclude that the

---

3. We were advised at oral argument that no health systems agencies continue in existence in the Commonwealth. We did recognize their unique position under the Act in *Southern Chester.* Now it appears that the Department's determinations of nonreviewability may go unchallenged. That, however, is a matter for the legislature, not this Court, to remedy.

legislature did not wish to confer upon them the rights to challenge the preliminary inquiry. Merely because the Department has set up a system permitting a preliminary inquiry ... does not mean that others foreign to the inquiry have rights to challenge its basis.

*Powers,* 121 Pa.Commonwealth Ct. at 329, 550 A.2d at 861–62 (citation omitted).

Petitioners concede that no provisions within the Act speak directly to the question of a competitor's standing to appeal a determination of nonreviewability (as opposed to a determination on a CON application, *see generally Powers* ). They maintain, however, that Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702, grants them standing because they have a "direct" interest in this matter. Section 702 states:

Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals....

Petitioners rely upon the Supreme Court's consideration of this statutory language in the case of *Application of El Rancho Grande, Inc.,* 496 Pa. 496, 437 A.2d 1150 (1981). In *El Rancho Grande* the Court indicated that one could have standing under Section 702 of the Administrative Agency Law provided that he or she had a direct interest in an adjudication by which he or she was aggrieved. To determine whether a competitor to one granted a liquor license had standing in the absence of a specific statutory grant of standing under the Liquor Code [4] the Court looked to the purpose of the Liquor Code and recognized that its goal was to restrain, not promote, the sale of liquor. The Court thus determined that a competitor had standing to appeal the grant of another's liquor license. *Accord Pennsylvania Automotive Association v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 121 Pa. Commonwealth Ct. 352, 550 A.2d 1041 (1988) (trade associa-

---

**4.** Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101 through 8–803.

tion whose members were competitors to entity receiving favorable adjudication had standing to appeal adjudication where purpose of substantive legislation was to protect Commonwealth's economy). In contrast to the Liquor Code's purpose, which is to restrain the sale of liquor, we recognized in *Powers* that the Health Care Facilities Act's purpose is to *encourage* competition.

Petitioners seek to distinguish *Powers* by arguing that unlike the competitors in Powers they had been granted intervenor status by the Department. That status was granted pursuant to the provisions of Part II of the General Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 31.1–35.251. Therein, under the definition of "intervener," we are instructed that admission by an agency as an intervener "may not be construed as recognition by the agency that the intervener has a direct interest in the proceeding or might be aggrieved by an order of the agency in the proceeding." 1 Pa.Code § 31.3. Accordingly, we must reject Petitioners' attempt to distinguish *Powers* on the basis that they were granted intervenor status.

We also reject Petitioners claim that under *Laurel Mobile Health Services, Ltd. v. Department of Health*, 121 Pa. Commonwealth Ct. 291, 550 A.2d 616 (1988), we implicitly held that a competitor has standing to appeal a determination of nonreviewability when we reached the merits instead of disposing of the case on a motion to quash. We held in *Laurel Mobile* that what was actually sought was an amendment to a CON (although the parties seeking to acquire the equipment attempted to characterize the case as not being within the ambit of the CON procedures). Even assuming, however, that *Laurel Mobile* could be read as implicitly granting standing to competitors to challenge a determination of nonreviewability, *Powers* (which was filed the same day as *Laurel Mobile*) actually *decided* the issue and is thus controlling on the question.

Accordingly, having determined that Petitioners do lack standing to appeal, we shall grant the motion to quash on

476

this basis and dismiss the petition for review.[5]

## ORDER

NOW, January 22, 1990, Respondents' motions to quash on the basis of lack of standing are hereby granted and the petition for review in the above-captioned matter is dismissed.

5. Because of our disposition of the standing question, we need not reach the other issues raised. We also note that should Respondents engage in activities that would place them within the purview of the provisions of the Act that are governed by CON requirements, Petitioners, as well as the Department, would not be without a remedy to challenge, and even prevent, those activities.